In the Supreme Court of Georgia

Decided:   January 19, 2016

S15A1525.  NORMAN v. THE STATE.

NAHMIAS, Justice.

Appellant Edward Norman was convicted of malice murder and necrophilia in connection with the death of Monique Flores-Owens.  On appeal, he disputes the sufficiency of the evidence supporting his necrophilia conviction and the permissibility of a portion of the prosecutor's closing argument.  We affirm.[1]

1.     Viewed in the light most favorable to the verdicts, the evidence at trial showed the following.  On September 8, 2011, DeKalb County police

---

[1] The victim was killed on September 5, 2011.  On December 1, 2011, Appellant was indicted in DeKalb County for malice murder, two counts of felony murder, two counts of aggravated assault, and necrophilia.  After a trial from December 3 to 5, 2012, the jury found Appellant guilty on all counts except the felony murder charge based on aggravated assault with intent to rob and that underlying felony.  The trial court sentenced Appellant to serve life in prison for malice murder plus a consecutive term of ten years for necrophilia.  The remaining felony murder verdict was vacated by operation of law, and the verdict for aggravated assault with intent to murder merged into the malice murder conviction.  On January 3, 2013, Appellant filed a motion for new trial, which he amended with new counsel on May 22 and September 10, 2014.  After a hearing, the trial court denied the motion on October 30, 2014.  Appellant filed a timely notice of appeal, and the case was docketed in this Court for the September 2015 term and submitted for decision on the briefs.

responded to the United Inn Suites and found Flores-Owens dead in a hotel room. She was lying on the floor covered by a sheet, with a pillow under her head and two Bibles and other items placed on top of her body. The room was registered in Appellant's name. A few days later, the police located Appellant and brought him to the police station to be interviewed.

In his hour-long audiotaped interview, which was played for the jury at trial, Appellant offered the following account of how Flores-Owens ended up dead in his hotel room. He met Flores-Owens on or about September 5, 2011, at a MARTA station in downtown Atlanta, and she eventually agreed to accompany him back to his room at the "United." After arriving, they smoked crack cocaine and drank beer. They then disrobed, and Appellant attempted to perform oral sex on Flores-Owens; when she resisted, a noisy struggle ensued. The noise caused the guests in adjacent rooms to knock on the door and ask if everyone was all right. Appellant answered the door naked and demanded to be left alone, quickly slamming the door on them. Appellant then continued to struggle with Flores-Owens. He initially smothered her with a pillow, then wrapped a cord around her neck, and finally manually strangled her to death. Appellant stayed in the room for about two days, during which he spoke to the

2

deceased victim and had sex with her corpse. Before leaving the room, he covered her with a sheet and put two Bibles on her body, along with other personal effects of hers.

At trial, several witnesses who were guests at the hotel on September 5, 2011, testified that they heard a struggle in Appellant's hotel room and went to the room to confront him. While the guests had varying recollections of exactly what he said during the confrontation, they all agreed that they saw Appellant and a woman naked in the room and that Appellant acted aggressively, quickly slamming the door to end the encounter. The medical examiner testified that Flores-Owens's cause of death was manual strangulation and that her body had been in the hotel room at least a day or two by the time the police found it. Police officers testified about the condition of the room where the victim's body was found, and the jury was shown a videotape of the room made by the police, which matched the Appellant's description of how he had left it. The defense theory was that Appellant was not guilty by reason of insanity. Appellant did not testify or call any witnesses.

Appellant does not dispute the legal sufficiency of the evidence supporting his murder conviction. Nevertheless, as is this Court's practice in murder cases,

3

we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of malice murder. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2. Appellant argues that the evidence presented at trial was legally insufficient to support his conviction for necrophilia because the only evidence of the crime was his confession, which he contends was uncorroborated and equivocal. We disagree.

(a) Under Georgia statutory law, a defendant's entirely uncorroborated confession cannot support a conviction. See former OCGA § 24-3-53 ("A confession alone, uncorroborated by any other evidence, shall not justify a conviction.").[2] For a confession to be sufficiently supported, however,

---

[2] Appellant was tried under the Georgia's old Evidence Code. In the new Code, this provision is found at OCGA § 24-8-823.

4

other evidence need only corroborate it in any particular. See Moore v. State, 285 Ga. 157, 161 (674 SE2d 315) (2009). Moreover, when the jury finds that a confession is corroborated, "it need not find proof of guilt beyond a reasonable doubt 'from evidence separate from and wholly independent of the confession, and [it] instead may consider the confession along with other facts and circumstances independent of and separate from it.'" Merritt v. State, 292 Ga. 327, 329-330 (737 SE2d 673) (2013) (citation omitted).

In this case, the State presented evidence corroborating Appellant's confession in many particulars. The victim's body was found in the room registered to Appellant at the "United" hotel, where he told the police he took her. The testifying guests from the hotel corroborated Appellant's account of the noise he and the victim made as they struggled in the room; his and the victim's appearing naked when the guests knocked at their door; and his aggressive attitude towards the interruption. Physical evidence found at the crime scene and testimony from the medical examiner corroborated Appellant's statements about the manner in which he killed the victim; the items used to kill the victim; the multiple days he spent with the victim's body after he killed her; the condition in which he left her body; and the items he left on top of her body.

This corroboration was more than sufficient. See Moore, 285 Ga. at 161.

(b) Appellant argues that even if his confession was sufficiently corroborated, it could not support his conviction for necrophilia because his statements that he had sexual contact with Flores-Owens after killing her were "vague, illusive, and contradictory."[3] But Appellant spontaneously confessed to "necrophilia" without prompting by the interviewing officers, and he went on to mention sex with the dead victim several more times during the interview. When Appellant was asked directly, "You had sex with her after she was dead?" he answered "Yes," and at two points later in the interview, he said that what he did with the victim made him a "necrophile."

(c) When viewed in the light most favorable to the verdict, the evidence of Appellant's confession and its corroboration was legally sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of necrophilia. See Jackson, 443 U.S. at 319; Vega, 285 Ga. at 33; OCGA § 24-3-53. And because the same standard applies to appellate review of Appellant's motion for a directed verdict of acquittal, the trial court did not err in denying

---

[3] Under OCGA § 16-6-7 (a), "[a] person commits the offense of necrophilia when he performs any sexual act with a dead human body involving the sex organs of the one and the mouth, anus, penis, or vagina of the other."

that motion.  See <u>Lewis v. State</u>, 296 Ga. 259, 261 (765 SE2d 911) (2014).

3.      Appellant contends that the prosecutor made improper remarks to the jury during closing argument.  However, Appellant did not object to those remarks, so the issue is not preserved for review on appeal, even under a plain error standard.  "In the appeal of a non-capital case, 'the defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal.'"  <u>Scott v. State</u>, 290 Ga. 883, 885 (725 SE2d 305) (2012) (citation omitted).

<u>Judgment affirmed.  All the Justices concur.</u>