301 Ga. 675
FINAL COPY

S17A0702. GRAHAM v. THE STATE.

BLACKWELL, Justice.

DeSean Lamar Graham was tried by a DeKalb County jury, and he was convicted of the murder of Carlos Daniels and the unlawful possession of a firearm during the commission of a felony. Graham appeals, contending that the evidence is insufficient to sustain his convictions and that the trial court erred when it refused to charge the jury on voluntary manslaughter as a lesser included offense. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] Daniels was killed on July 9, 2012. On July 15, 2014, a DeKalb County grand jury indicted Graham for malice murder, felony murder, aggravated assault, and the unlawful possession of a firearm during the commission of a felony. (Graham also was charged with the unlawful possession of a firearm by a convicted felon, but that charge was dismissed by nolle prosequi.) Graham's trial commenced on February 2, 2015, and the jury returned its verdict four days later, finding him guilty on all counts (other than the dismissed count of possession of a firearm by a convicted felon). Graham was sentenced to imprisonment for life for malice murder and imprisonment for a consecutive term of five years for the unlawful possession of a firearm during the commission of a felony. The verdict as to felony murder was vacated by operation of law, and the aggravated assault merged with the malice murder. See Malcolm v. State, 263 Ga. 369, 371–374 (4)-(5) (434 SE2d 479) (1993). Graham timely filed a motion for new trial on March 3, 2015, and he amended it on April 8, 2016. The trial court denied the motion for new trial on May 3, 2016, and Graham timely filed a notice of appeal on May 5, 2016. The case was docketed in this Court for the April 2017 term and submitted for decision on the briefs.

1. Viewed in the light most favorable to the verdict, the evidence shows that on July 9, 2012, Graham drove his girlfriend and his eight-year-old nephew to the pool at the Jasmine at Winter's Chapel Apartments in DeKalb County. Graham lived at Cornerstone Apartments, which is adjacent to the Jasmine. Graham became involved in a verbal altercation at the pool with Daniels, a resident at the Jasmine, and Graham threatened to shoot Daniels. Soon thereafter, Graham — who was "very angry" — left the pool with his girlfriend and nephew, and he drove them to his apartment. Graham left his girlfriend and nephew (and his car) at Cornerstone, took off on foot, and was gone for about 25 minutes. Meanwhile, Daniels was also upset by the confrontation at the pool, but he spoke to the property manager at the Jasmine, calmed down, and walked off in the direction of his apartment. A few minutes later, Daniels was fatally shot in the parking lot outside his apartment.

When Graham returned to his apartment at Cornerstone, his girlfriend observed that he was out of breath and that he threw up in the bathroom. Graham told his girlfriend that he shot "the dude at the pool" because "the dude" had "disrespected his family." He also provided several details about the shooting, including that he continued firing his weapon at Daniels after he fell

2

to the ground and that he fled the scene by running through the "cut," which was a wooded trail between the Jasmine and Cornerstone. For several months, Graham's girlfriend told no one about the confession.

Police investigators initially were unable to identify or locate the man who had been involved in the poolside confrontation with Daniels. But Graham's girlfriend eventually saw a report that police were "searching for a man who shot and killed another man after an altercation at a swimming pool at . . . [t]he Jasmine at Winter's Chapel Apartments." She told a friend about Graham's confession, the police were notified, and Graham was arrested. Graham admitted to the poolside altercation with Daniels, but he denied that he returned to the Jasmine to shoot him.

On appeal, Graham contends that the evidence is insufficient to support his convictions, and he relies upon OCGA § 24-8-823, which provides that "[a] confession alone, uncorroborated by any other evidence, shall not justify a conviction." But while the State may not rely solely on a defendant's confession, "no specific manner of corroboration [of the confession] is required, and corroboration in any particular is sufficient." McMullen v. State, 300 Ga. 173, 174-75 (1) (794 SE2d 118) (2016). Here, in addition to the testimony from

3

Graham's girlfriend about his behavior before and after the shooting, the confession also was sufficiently corroborated by an eyewitness, who testified that "after [Daniels] hit the ground [from the first shot, the shooter] . . . reached over him and shot him [again]" before running off, and by two eyewitnesses who testified that the shooter ran toward a wooded trail that cut through from the Jasmine to Cornerstone.[2]

Graham points to the lack of physical evidence connecting him to the crime, the failure of any eyewitness to identify him, and his assertion that his girlfriend was not a credible witness. But the State "was not required to produce any physical evidence," Johnson v. State, 296 Ga. 504, 505 (1) (769 SE2d 87) (2015), and, as we have explained many times, "it is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." Merritt v. State, 292 Ga. 327, 330 (1) (737 SE2d 673) (2013) (citation and punctuation omitted). Viewing all the evidence in the light most favorable to the verdict, we conclude that it was sufficient to authorize a

_____

[2] Other evidence was presented showing that this trail was used almost exclusively by residents of Cornerstone to access the Jasmine and "most people" would not even know that the trail existed.

rational trier of fact to find beyond a reasonable doubt that Graham was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. We turn now to Graham's contention that the trial court should have charged the jury on voluntary manslaughter as a lesser included offense. Such a charge is required only when there is some evidence that the defendant acted "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). And "[i]t is a question of law for the courts to determine whether the defendant presented any evidence of sufficient provocation to excite the passions of a reasonable person." Campbell v. State, 292 Ga. 766, 767 (2) (740 SE2d 115) (2013).

Here, the poolside confrontation was not the type of "serious provocation" that would require a charge on voluntary manslaughter. Graham acknowledged that he and Daniels merely engaged in an argument, and his most serious complaint about Daniels's conduct was that it initially made him fear that Daniels "wanted to hit [him] and stuff" or might try to "push [him] in the pool or something." Graham points to evidence that he was "very angry" after the

argument with Daniels, but there was no evidence that Daniels's conduct at the pool would provoke any reasonable person to go home, get a gun, run back to Daniels's apartment complex, and shoot him. We find that Graham's response to the confrontation at the pool was objectively unreasonable as a matter of law, and it does not support a voluntary manslaughter charge. See Johnson v. State, 292 Ga. 785, 787 (2) (741 SE2d 627) (2013); Lewandowski v. State, 267 Ga. 831, 832 (2) (483 SE2d 582) (1997) (OCGA § 16-5-2 provides an objective standard; "[i]t is of no moment whether the provocation was sufficient to excite the deadly passion in the particular defendant"). Accordingly, the trial court's refusal to charge on voluntary manslaughter was no error.

Judgment affirmed. All the Justices concur.

Decided August 14, 2017.

Murder. DeKalb Superior Court. Before Judge Flake.

Matthew K. Winchester, for appellant.

Sherry Boston, District Attorney, Deborah D. Wellborn, Shelly D. Faulk, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B.

6

Attaway Burton, Deputy Attorney General, Paula  K. Smith, Senior Assistant Attorney General, Aimee F. Sobhani, Assistant Attorney General, for appellee.