304 Ga. 496
FINAL COPY


S18A0669. CATO v. THE STATE.


PETERSON, Justice.

Darron Cato appeals his convictions for felony murder and a firearm offense stemming from the death of T'Shanerka Smith.[1] Cato argues that the trial court committed plain error when it instructed the jury on the commission of aggravated assault — the predicate offense for the felony murder charge — in a manner not charged in the indictment. Cato also argues that his trial counsel provided ineffective assistance by failing to present a complete alibi defense.

---

[1] Smith was shot on February 14, 2010. A Fulton County grand jury indicted Cato along with three co-defendants on May 7, 2010, charging them with malice murder, felony murder, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. Cato initially was tried with his co-defendants in November 2010, but the trial court declared a mistrial as to Cato only when his counsel experienced a medical problem mid-trial. The co-defendants' trial continued to verdict, while Cato was separately tried anew in August 2011. A jury acquitted Cato of malice murder and found him guilty of the other three charges. The trial court noted that the aggravated assault count merged into felony murder and sentenced Cato to life in prison on the felony murder count and a consecutive sentence of five years on the firearm count. On August 30, 2011, Cato filed a motion for new trial, later amended. The trial court denied the motion on September 10, 2014. On Cato's unopposed motion to set aside that order on the grounds he was not timely notified of its entry, the trial court vacated its order and filed a new order denying the motion for new trial on April 14, 2015. Cato filed a timely notice of appeal to this Court, and the case was docketed to the April 2018 term and submitted for decision on the briefs.

Because any error in the aggravated assault instruction was harmless, and because Cato cannot show that trial counsel's failure to call Cato's father as an alibi witness was constitutionally deficient performance, we affirm.

1. Viewing the evidence in the light most favorable to the verdict, Smith's death can be traced to a dispute between Smith's brother (Eddie Edwards) and a group that included Cato. The events in question took place at a Fulton County apartment complex on Beeler Drive, near Cleveland Avenue. The night before the shooting, Cato, Derek McCarter, Jeneral Walter, and several others partied in an apartment unit in which McCarter was squatting. The next day, Edwards, who performed maintenance at the apartment complex and was assisting management in the process of boarding up units that were supposed to be vacant, arrived at the apartment and began removing the locks from the doors, telling McCarter and Cato that they needed to leave. This sparked an argument between Edwards and Cato.

After Edwards returned to his own apartment, a group of three or four men drove up in a car and one of them (Walter) began shooting out of a back seat window of the car. No one was injured by the shooting, but Edwards and a cousin proceeded to find McCarter and beat him up in retaliation. Police

2

responded to a 911 call, and McCarter was taken to the hospital.

Cato and his friends, who had left the apartment complex, returned that day seeking revenge. Walter's girlfriend, Angelica Mitchell, drove Walter, Cato, and two other men to the apartment complex. Mitchell observed that at least Cato and Walter had firearms. Around 12:55 p.m., Mitchell dropped off her four passengers outside the complex. Cato, Walter, and one of the other men shot in the direction of Edwards's apartment, where Smith had been standing on the porch. Smith was shot and died from her wounds after being taken to a hospital. An eyewitness identified Cato as one of the shooters.

Although Cato does not challenge the sufficiency of the evidence, we have independently reviewed the record and conclude that the trial evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Cato first argues that the trial court committed plain error by instructing the jury on the commission of aggravated assault in a manner not charged in the indictment. Because Cato cannot show that any error in this instruction likely affected the outcome of the trial, this is not a basis for reversal.

Here, the felony murder charge was premised on the felony of aggravated assault committed by shooting Smith. The trial court instructed the jury:

> A person commits aggravated assault when that person assaults another person with a deadly weapon. To constitute such assault, actual injury to the alleged victim may not be shown. It is only necessary that the evidence show beyond a reasonable doubt that the defendant intentionally committed an act that placed the alleged victim in reasonable fear of immediately receiving a violent injury.

Cato argues that the trial court erred by instructing the jury that the State could prove aggravated assault based on mere reasonable apprehension of injury, such that the jury could have found Cato guilty if it found that he simply pointed a gun at Smith, even though the indictment alleged that Cato actually fired a weapon at the victim.

Cato did not object at trial, and so his challenge to the jury charge is reviewed for plain error only. See OCGA § 17-8-58 (b). Under plain error review, "we will reverse the trial court only if the alleged instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." Saffold v. State, 298 Ga. 643, 650 (7) (784 SE2d 365) (2016) (citation and punctuation omitted).

It is error to charge the jury that an aggravated assault may be committed

4

in a method not charged in the indictment. Chapman v. State, 273 Ga. 865, 868 (2) (548 SE2d 278) (2001). But even assuming that the trial court gave an incorrect charge on aggravated assault, Cato cannot show that this instruction likely affected the outcome of the proceedings. Here, it is unlikely that there was any confusion about what the State had to prove in the light of the other instructions given by the court, the nature of the charges, and the evidence presented at trial.

The indictment charged that Cato and his three co-defendants committed felony murder by causing Smith's death during the commission of the offense of aggravated assault by shooting Smith with a handgun. The trial court provided the indictment to the jury during its deliberations. The trial court also instructed jurors that the State bears the burden to prove every material allegation and every essential element of the crime charged beyond a reasonable doubt. Although Cato complains that this instruction came in the court's preliminary instructions, several days before the jury began deliberating, the trial court also instructed the jury after the close of evidence that "[t]he indictment and the plea form the issue that you are to decide" and that "[n]o person shall be convicted of any crime unless and until each element of the

5

crime *as is charged* is proven beyond a reasonable doubt." No sort of instruction was necessary to explain to the jury what it meant to say Cato and his co-defendants committed aggravated assault against Smith "by shooting her." These instructions cured any defect in the instructions. See Simpson v. State, 302 Ga. 875, 877 (2) (808 SE2d 718) (2017); Herrington v. State, 300 Ga. 149, 152 (2) (794 SE2d 145) (2016); Johnson v. State, 295 Ga. 615, 618 (2) (759 SE2d 837) (2014).

Additionally, the context of the instructions made the juror confusion suggested by Cato even more unlikely. Cato and his co-defendants were charged with felony murder, the jury was properly instructed on felony murder, and there was no dispute that Smith died as a result of being shot (not as a result of being placed in fear). Thus, there is no likelihood that the jury, in convicting Cato of felony murder, thought that the aggravated assault on which that charge was premised merely put Smith in reasonable apprehension of immediately receiving a violent injury.[2] See Johnson, 295 Ga. at 618 (2) (appellant did not show that any error in instructing jury only on reasonable apprehension means of

---

[2] For these reasons, contrary to Cato's suggestion on appeal, it is not likely that the jury convicted him of felony murder merely based on a conclusion that he participated in the earlier, non-fatal drive-by shooting.

6

committing assault affected the outcome of the proceedings, where jury found appellant guilty of felony murder premised on aggravated assault by shooting, and there was no dispute that victim died as a result of being shot by appellant's rifle); Patel v. State, 278 Ga. 403, 407 (5) (603 SE2d 237) (2004) (rejecting argument that charge permitted jury to convict if it found that defendant placed the intruder in reasonable fear of receiving a violent injury, even though the indictment specified that the defendant committed aggravated assault by shooting the victim, where defendant was convicted of felony murder predicated on aggravated assault and thus the jury could not convict defendant on mere finding that he pointed a pistol at the victim). Cato has not shown a likelihood that any error in the aggravated assault instruction caused the jury to convict him on the basis that he committed felony murder in a manner not charged in the indictment.

3. Cato also argues that his trial counsel provided ineffective assistance by failing to present a complete alibi defense. Specifically, he complains about counsel's failure to call Cato's father as a witness at trial. Because this was a decision that reasonable counsel could have made for strategic purposes, trial counsel was not deficient and Cato's claim fails.

At trial, Cato's mother (Yvonda Dorsey) and cousin (Robert Reid) testified in support of Cato's alibi defense that his mother picked him up before the final confrontation that resulted in Smith's death. Dorsey testified that she picked up her son at approximately 12:30 p.m. on the day of the shooting and drove him to Reid's house, where she stayed for a couple of hours. Reid testified that Cato and Dorsey arrived at his house at approximately 1:00 p.m. and stayed for about 45 minutes before leaving together. At trial, the State introduced evidence that there were calls between Dorsey's phone and Cato's phone during the time they allegedly were together, including a call at 1:14 p.m. And in closing argument, the State challenged Dorsey's testimony based on cell tower data showing movements of Dorsey's phone, including that it was near Cleveland Avenue at 2:13 p.m. on the day of the shooting — which, the prosecutor suggested, showed that Dorsey picked up Cato then. Dorsey testified that she did not bring her phone with her when she went to pick up her son but left it at home with Cato's father, saying that she used Cato's phone to call her husband while she was out.

Cato's trial counsel named Cato's father, Darron Cato, Sr., as a potential trial witness but did not call him to testify. Cato, Sr. did testify at the motion for

new trial hearing, saying he met with trial counsel several times before trial and was waiting outside of the courtroom at trial, per counsel's instructions, given that he was a witness. Cato argues that his father's testimony at the motion for new trial hearing shows that he would have corroborated Dorsey's testimony if called to testify at trial. In particular, Cato, Sr. testified that Dorsey received a phone call at home at "noon time, around about maybe 11:00 something," then left to pick up their son, returning around 3:00 p.m. Cato, Sr. also testified that Dorsey left her cell phone at home with him when she went out and that he and his wife subsequently had multiple phone conversations, with Cato, Sr. using Dorsey's cell phone and Dorsey using Cato's. Cato, Sr. testified that he went shopping — "head[ing] up on Cleveland Avenue" — while his wife was out.

Trial counsel testified that he did not call Cato, Sr. to testify because, based on the statements of Cato, Sr. and Dorsey, as well as the cell phone records, counsel did not believe Cato, Sr. was credible. Counsel added that Cato's mother came across as an "unbelievable" witness, and Cato himself indicated during her testimony that he wished her to be removed from the witness stand. In denying the motion for new trial, the trial court agreed with trial counsel's assessment that Cato, Sr. was not credible.

To prevail on his ineffectiveness claim, Cato "must show that trial counsel's performance fell below a reasonable standard of conduct and that there existed a reasonable probability that the outcome of the case would have been different had it not been for counsel's deficient performance." Scott v. State, 290 Ga. 883, 889 (7) (725 SE2d 305) (2012) (citing Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)). Where an appellant fails to meet his burden in establishing one prong of the Strickland test, we need not review the other, as a failure to meet either of the prongs is fatal to an ineffectiveness claim. See Lawrence v. State, 286 Ga. 533, 533-534 (2) (690 SE2d 801) (2010). To prove deficient performance, Cato "must show that his trial counsel acted or failed to act in an objectively unreasonable way, considering all of the circumstances and in light of prevailing professional norms." Muckle v. State, 302 Ga. 675, 680 (2) (808 SE2d 713) (2017) (citation and punctuation omitted). "We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003) (citation and punctuation omitted).

"In particular, trial counsel's decision as to which defense witnesses to

call is a matter of trial strategy and tactics, and tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances." Muckle, 302 Ga. at 680 (2) (citation and punctuation omitted). Here, counsel's decision was both tactical and reasonable. This is not a case of a lawyer who failed to secure the testimony of a witness through lack of diligence, as Cato, Sr. had been named as a witness and was at the courthouse, available to testify. The trial court agreed with counsel's assessment that Cato, Sr. was not credible, and we are not in a position to second-guess that assessment. "The decision not to call [Cato, Sr.] was a reasonable strategic one under the circumstances, not deficient performance." Muckle, 302 Ga. at 680 (2) (no deficient performance in failing to call witness whose testimony would somewhat conflict with trial strategy and defendant's own statements and whose credibility trial counsel questioned given witness's criminal history). Cato's ineffective assistance claim therefore fails.

Judgment affirmed. All the Justices concur.

Decided October 9, 2018.

Murder. Fulton Superior Court. Before Judge Manis, Senior Judge.

Eric J. Taylor, Anna J. Kurien, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Stephany J. Luttrell, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.