**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 14, 2019**

# In the Court of Appeals of Georgia

A19A0343. LEWIS v. THE STATE.

BROWN, Judge.

Terry Allen Lewis appeals his convictions for possession of methamphetamine with intent to distribute, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. He contends that (1) his trial counsel was ineffective for not calling certain witnesses and failing to file motions to suppress certain evidence; (2) there was insufficient evidence to support his convictions; and (3) the trial court erred in its charge to the jury. For the reasons that follow, we reverse Lewis' conviction for possession of a firearm during the commission of a crime, but affirm the remaining convictions.

Viewed in the light most favorable to the jury's verdict, *Duncan v. State*, 346 Ga. App. 777 (815 SE2d 294) (2018), the evidence shows that on September 25,

2014, Corporal Larry Bracken responded to an address on Woodside Road in Richmond County after an anonymous caller reported traffic in and out of the vacant house on the property. Bracken testified that the subject neighborhood had experienced a rash of recent burglaries and that when police "get these calls, we take action." Bracken arrived at that address and noticed cars in the driveway and curtains in the windows. He knocked and the woman who answered told him he had the wrong address, that the vacant house was next door. As Bracken proceeded next door, he noticed that the main front door was open but a glass storm door was closed, and he could hear people moving around inside. Bracken testified that it appeared the carpet in the home was being replaced. When no one answered Bracken's knock, he announced "sheriff's office" and entered the home's living room. As Bracken, who was dressed in his police uniform, turned the corner from the living room to the den, he noticed Lewis, and the two men "scared each other." When Bracken again announced "sheriff's office," Lewis reached his right hand behind his back, pulled out a firearm, and pointed the barrel of the gun directly at Bracken. Bracken testified that he pulled out his firearm, and as he "was pulling the slack out of the trigger [to shoot Lewis], [Lewis] dropped his gun and threw his hands in the air." As Lewis threw the gun into a closet, Bracken commanded him to get his hands up and to back up away

2

from the gun. As the two men backed into the kitchen of the home, Bracken noticed a second man sitting at the counter. Bracken placed both men in handcuffs. Bracken testified that at that point, Lewis was under arrest.

After Lewis gave verbal consent, Bracken patted him down for weapons and discovered in his left rear pocket a candy tin containing methamphetamine.[1] Bracken also found in the home a scale and small baggies, as well as more than $400 cash on Lewis' person, including twenty-one twenty dollar bills, which Bracken testified is a sign of "selling." Bracken patted down the second man, but found nothing. Bracken arrested the second man for disorderly conduct and called for backup.

Bracken, who was tendered as an expert in the field of narcotics investigation, testified that it is common for drug dealers to use vacant homes or rental cars to distribute drugs instead of their own homes or cars because they are afraid of "asset forfeiture." During cross-examination, Bracken confirmed that he weighed the methamphetamine on the scale he found in the home and that it weighed 3.9 grams. A GBI forensic chemist testified that the methamphetamine weighed 5.07 grams.

---

[1] Prior to patting down Lewis to check for weapons or other items that could be used to harm the officer or Lewis, Bracken asked Lewis if there was anything else in his pockets. Lewis said no and when Bracken asked about the "hard rectangle object" in Lewis' left rear pocket, Lewis "shrugged his shoulders in a manner of like [he] [didn't] know" what it was.

3

Lewis testified at trial that William Walker hired him to work in the home, "install[ing] carpet [and] vinyl[,] and fix[ing] the subfloor." Lewis stated that he had been on the job for three days working when Bracken appeared in the hallway. Lewis disputed Bracken's version of their encounter, specifically denying that he ever pulled a gun on Bracken or that the gun even belonged to him, explaining that the first time he saw the gun was when another officer arrived, searched the home, and "came back out with a pistol." He explained that he had been at the house for only fifteen minutes when Bracken arrived and that a carpet subcontractor he had hired was mad at him, had left the job, and "probably . . . ha[d] called" the police to complain of trespassers. Lewis denied ever being in the kitchen where the scale and baggies were found, explaining that the second man had been within "two feet" of the baggies, and he claimed that Bracken found the tin container in the laundry room amongst some tools left by the subcontractor, not Lewis' pocket. As for the money, Lewis first testified that his mother got it out of an ATM to give to him, but later testified that she got it from a bank teller.

1. Lewis first argues that his trial counsel was ineffective in several ways. We disagree.

4

In evaluating claims of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*, [466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984),] which requires a defendant to show that his trial counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Additionally, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption. Lastly, unless clearly erroneous, we will uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed de novo.

(Citations and punctuation omitted.) *Duncan*, 346 Ga. App. at 783 (2).

(a) Lewis contends that counsel was deficient in failing to call as a witness the second man arrested at the scene because he would have testified that the scale and baggies belonged to him and that he had a lawful purpose for possessing the items.[2] At trial, Lewis told the court that he "would have liked to call witnesses in [his] case[,]" including Jimmy Lanier, the second man in the home. When asked at the

---

[2] At trial, Bracken testified that the second man was charged with disorderly conduct, "a county ordinance of drug paraphernalia being in or around." Lewis posits that the disorderly conduct charge supports the inference that the second man – and not he – possessed the scale and baggies.

motion for new trial hearing why he did not call Lanier as a witness at trial, trial counsel testified "I would not say that there was a [trial] strategy there." Lanier did not testify at the motion for new trial hearing.

Because Lanier did not testify at the motion for new trial hearing, we have no idea whether he would have testified as Lewis hypothesizes. "The failure of trial counsel to employ evidence cannot be deemed to be prejudicial in the absence of a showing that such evidence would have been relevant and favorable to the defendant." (Footnote an punctuation omitted.) *Herrington v. State*, 285 Ga. App. 4, 6 (b) (645 SE2d 29) (2007). See also *Hunt v. State*, 278 Ga. 479, 480-481 (4) (604 SE2d 144) (2004) (failure of trial counsel to call investigator as a witness not prejudicial in absence of showing that evidence was crucial to defense). Accordingly, counsel was not ineffective in this regard.

(b) Lewis next argues that his trial counsel was ineffective for failing to call his mother as a witness. Lewis' mother testified at the motion for new trial hearing that two days before her son was arrested, she withdrew $400 from her bank and gave it to him so that he could reclaim something from a pawn shop. Trial counsel explained that he did not call Lewis' mother as a witness because he "was not overly troubled

6

about the money. I was more concerned about the fact that there was a scale in the kitchen and baggies that looked like somebody was selling the drug from the house."

In evaluating this claim, we are guided by the principles stated above as well as the general rule that "trial counsel's decision as to which defense witnesses to call is a matter of trial strategy and tactics, and tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances." (Citation and punctuation omitted.) *Muckle v. State*, 302 Ga. 675, 680 (2) (808 SE2d 713) (2017). In this case, Lewis was in possession of at least 3.9 grams of methamphetamine – and in the presence of a scale and baggies – when he pointed a gun at a uniformed police officer investigating a report of traffic in and out of the vacant home in which Lewis alleges he had been working for three days. As the State points out, even if Lewis' mother explained to the jury why her son had a large sum of cash, she could not explain the drugs, gun, scale, and baggies. Trial counsel recognized this obstacle and chose not to draw attention to it. Under these circumstances, we conclude that trial counsel's decision not to call Lewis' mother was reasonable trial strategy and not deficient performance. See id.

(c) Lewis next contends that trial counsel should have filed a motion to suppress the evidence seized from the home, including the firearm and drugs, because Bracken did not have a lawful reason to be in the allegedly vacant home after he realized that it was being worked on. At the motion for new trial hearing, trial counsel testified that he did not file a motion to suppress on this ground because Bracken knocked on the door of the home and received no response, "[h]e was still investigating the possibility that there was a burglary in progress. I was of the opinion that he had a right to enter the house, particularly since there was no response to his knocking."

"[W]hen trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." (Punctuation and footnote omitted.) *Duncan*, 346 Ga. App. at 783 (2). "As a general rule . . . a person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." (Citation and punctuation omitted.) *Jones v. State*, 320 Ga. App. 681, 685 (2) (740 SE2d 655) (2013).

8

> [T]o challenge a search and seizure, a defendant must show he had an expectation of privacy in the premises searched or in the property seized. And the burden is on the one claiming a violation of Fourth Amendment rights to demonstrate that he has standing to contest such violation, i.e., that he has a legitimate expectation of privacy in the premises searched or the property seized.

(Citations and punctuation omitted.) Id. See also *Atwater v. State*, 233 Ga. App. 339, 340 (2) (503 SE2d 919) (1998), citing *Rakas v. Illinois*, 439 U. S. 128 (99 SCt 421, 58 LE2d 387) (1978). While an overnight guest in a private residence may have a legitimate expectation of privacy in that residence, "a person who is merely present with the consent of the householder has no such expectation." (Citation and punctuation omitted.) *Barlow v. State*, 327 Ga. App. 719, 722 (1) (761 SE2d 120) (2014). See also *Minnesota v. Carter*, 525 U. S. 83, 90-91 (119 SCt 469, 142 LE2d 373) (1998) (person present in another's dwelling to engage in purely commercial transaction, who is on the premises for a relatively short time, and who does not have a previous connection with the householder, has no legitimate expectation of privacy in the premises).

Aside from testifying that he was hired to work in the home by a man named William Walker, whom Lewis stated is "[r]eal estate," Lewis has failed to come

9

forward with any evidence that would suggest that he otherwise had a legitimate expectation of privacy in the vacant home, and Walker did not testify at trial or at the motion for new trial hearing. Given that Lewis lacked standing to challenge the search of the home, his trial counsel was not ineffective for failing to file a meritless motion to suppress the evidence found in the home.[3]

(d) Lewis next argues that trial counsel should have filed a motion to suppress related to the search of the candy tin because it was "[w]ithout warrant, consent, probable cause, or exigent circumstances." At the motion for new trial hearing, trial counsel testified that he did not file a motion to suppress the methamphetamine because "Bracken, prior to doing the pat down, asked Mr. Lewis for permission to search, and permission, as I recall, was granted. I mean, Mr. Lewis said, yeah, you can search me." When asked about not filing a motion to suppress on the specific issue of going into the candy tin, trial counsel stated: "I don't know, maybe I was thinking that when someone consents to a search of his person that he consents to a search of everything on his person."

---

[3] We note further that Lewis had no standing to challenge the seizure of the firearm because he had no possessory interest in it, having discarded it in a home in which he had no expectation of privacy. See, e.g., *United States v. Bushay*, 859 FSupp.2d 1335, 1352 (3) (b) (N.D. Ga., 2012).

Warrantless searches are unreasonable under the Fourth Amendment unless they fall within a well-established exception to the warrant requirement. See *Arizona v. Gant*, 556 U. S. 332, 338 (II) (129 SCt 1710, 173 LE2d 485) (2009). "[S]uch exceptions include searches conducted pursuant to consent, the existence of exigent circumstances, and searches incident to a lawful arrest." *Caffee v. State*, 303 Ga. 557, 560 (2) (814 SE2d 386) (2018). Pretermitting the issue of consent, Bracken had probable cause to arrest Lewis for threatening him with a gun. Because "probable cause existed for [Lewis'] arrest[,] the subsequent search which yielded the illegal contraband was permissible as a search incident to a lawful arrest."[4] *Mashburn v. State*, 186 Ga. App. 488, 489 (367 SE2d 881) (1988). See also *United States v. Robinson*, 414 U. S. 218, 235 (III) (94 SCt 467, 38 LE2d 427) (1973) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment [and] a search incident to the arrest requires no additional justification[;] it is the fact of the lawful arrest which establishes the authority to search."); *Chimel v. California*, 395 U. S. 752, 763 (89 SCt 2034, 23 LE2d 685) (1969) (noting that

---

[4] The cases relied on by Lewis are inapposite as neither concerns a search incident to arrest. See *Mason v. State*, 285 Ga. App. 596 (647 SE2d 308) (2007); *State v. Jourdan*, 264 Ga. App. 118 (589 SE2d 682) (2003).

11

arresting officer may search arrestee in order to remove any weapons useful for resisting arrest or effecting escape and that such a search may only include "the arrestee's person and the area 'within his immediate control' – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence"); *Caffee*, 303 Ga. at 562-564 (2) (b) (probable cause to arrest defendant for possession of marijuana authorized warrantless search of his pocket as incident to arrest). To the extent Lewis takes issue with Bracken actually opening the tin, we find no merit in this contention. In *Robinson*, the United States Supreme Court upheld the search of an arrestee's person and container within his pocket, finding as follows:

> Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that [the officer] did not indicate any subjective fear of the respondent or that he did not himself suspect that respondent was armed. Having in the course of a lawful search come upon the crumpled package of cigarettes, he was entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them as "fruits, instrumentalities, or contraband" probative of criminal conduct.

(Footnotes omitted.) 414 U. S. at 236 (IV). See *Bagwell v. State*, 214 Ga. App. 15, 16 (446 SE2d 739) (1994) (rejecting defendant's argument that officer was without

12

authority to open container discovered in pocket during search incident to arrest). See also *Graves v. State*, 138 Ga. App. 327, 329 (226 SE2d 131) (1976). Given the foregoing, trial counsel was not ineffective for failing to file a meritless motion to suppress this evidence.

2. Lewis next contends that the evidence was insufficient to support his convictions because Bracken's testimony was "wholly incredible of belief" and contained numerous contradictions and inconsistencies.

> When evaluating the sufficiency of evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence. Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court.

(Citation and punctuation omitted.) *Escutia v. State*, 277 Ga. 400, 402 (2) (589 SE2d 66) (2003). Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Lewis guilty beyond a reasonable doubt of the crimes charged.

3. Lewis last contends that the trial court committed plain error by failing to instruct the jury on (a) the definition or elements of possession of a firearm during the commission of a crime and (b) impeachment. We agree with the former argument but not the latter.

(a) Lewis did not object at trial to the trial court's failure to charge the jury on the definition or elements of possession of a firearm during the commission of a felony. Accordingly, his challenge is reviewed for plain error only. See OCGA § 17-8-58 (b). Lewis contends that plain error is shown because the jury could not know how to reach a decision without knowing all of the elements of the crime charged.

"In reviewing a challenge to the trial court's jury instruction, we view the charge as a whole to determine whether the jury was fully and fairly instructed on the law of the case." (Citation and punctuation omitted.) *Pippen v. State*, 299 Ga. 710, 712 (2) (791 SE2d 795) (2016).

> Under plain error review, we will reverse the trial court only if the alleged instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings.

14

(Citation and punctuation omitted.) *Cato v. State*, 304 Ga. 496, 498 (2) (820 SE2d 41) (2018). "[S]atisfying the plain-error standard is difficult, as it should be." (Punctuation and footnote omitted.) *State v. Crist*, 341 Ga. App. 411, 415 (801 SE2d 545) (2017).

A review of the record shows that the trial court instructed the jury on the elements of possession of methamphetamine with intent to distribute, but did not instruct the jury on the elements of possession of a firearm during the commission of a crime. But, the trial court read the indictment to the jury, in relevant part, as follows:

> And, in the second count, . . . Lewis is charged with possession of a firearm during the commission of a crime, for that the accused in the County of Richmond and on the 25th day of September, 2014, did have on his possession a firearm, to-wit: a Ruger LCR .38-caliber revolver during the commission of a crime involving possession of a controlled substance as provided in the Official Code of Georgia 16-13-30, to-wit: possession of methamphetamine, which crime was a felony. . . .

The trial court also instructed the jurors that the indictment formed the issue that they had been sworn to try, and that the State had the burden of proving beyond a reasonable doubt every material allegation of the indictment and every essential element of the crimes charged. The trial court also sent the indictment out with the jury during its deliberations and instructed the jury that the State must prove beyond

15

a reasonable doubt that Lewis "knowingly and intentionally participated in [both crimes] or helped in the commission of such crime[s]."

OCGA § 16-11-106 (b) provides that

[a]ny person who shall have *on or within arm's reach of his or her person* a firearm . . . during the commission of, or the attempt to commit: . . . (4) Any crime involving the possession, manufacture, delivery, distribution, dispensing, administering, selling, or possession with intent to distribute any controlled substance . . . as provided in Code Section 16-13-30 . . . and which crime is a felony, commits a felony. . . .

(Emphasis supplied.)

We find the trial court's omission here to be error in light of the evidence presented at trial. On the element of possession, the trial court only read the indictment which did not include the definition of possession as provided in OCGA § 16-11-106 (b). Here, Lewis presented at least some evidence that he did not pull the gun on Bracken and that it may have belonged to the disgruntled carpet subcontractor. Under the charge as given, the jury could have convicted Lewis of possession of a firearm during the commission of a crime simply because the officer found the gun in the home where Lewis had been working, even though the law requires that Lewis had the firearm "on or within arm's reach of his . . . person." Id. We conclude that this

16

omission affected Lewis' substantial rights and likely contributed to the outcome of the case in that it allowed the jury to convict Lewis without considering one of the essential elements of the crime. Accordingly, we reverse Lewis' conviction on the charge of possession of a firearm during the commission of a crime. See, e.g., *Aguilar v. State*, 340 Ga. App. 522, 524 (1) (798 SE2d 60) (2017) (reversing conviction for sexual battery where trial court failed to charge element of lack of consent); *Patterson v. State*, 328 Ga. App. 111, 120-121 (4) (761 SE2d 524) (2014) (reversing conviction for possession of hydrocodone where trial court misstated the law and failed to charge the jury that possession "had to be knowing").

(b) Lewis claims that the trial court erred in failing to charge the jury on impeachment despite his request and the trial court's own statements during the charge conference that it would give the charge. Because Lewis did not object to the omission of this charge, we again review this challenge only for plain error and find none.

The trial court instructed the jury on witness credibility, noting the various factors that may be considered in resolving credibility issues as follows:

> You must determine the credibility or believability of the witnesses. It is . . . for you to determine what witness or witnesses you will believe

17

and what witness or witnesses you do not believe, if there are some that you do not believe. In deciding their credibility or believability, you may consider all of the facts and circumstances of the case, the manner in which the witnesses testify, their interest or lack of interest in the case, their means and opportunity for knowing the facts about which they testify, the nature of the facts about which they testify, the probability or improbability of their testimony, and the occurrences about which they testify. You may also consider their personal credibility insofar as it may appear to you, legitimately, from the trial of this case.

The trial court further charged that "[i]t is for you to determine whether or not a witness has been impeached and to determine the credibility of such witness and the weight of the witness's testimony given during the trial of the case and how you will receive it." It also charged on false statements by a witness. The trial court's charge, when read as a whole, was sufficient to inform the jury how to properly examine and weigh the evidence in this case. Under the circumstances, we find that reversal is not warranted based on the trial court's failure to charge on impeachment. See, e.g., *Simonette v. State*, 262 Ga. App. 117, 119 (584 SE2d 623) (2003) (failure to charge on impeachment through crimes of moral turpitude harmless where trial judge gave lengthy instruction on witness credibility); *Blackstock v. State*, 270 Ga. 117, 119-120 (5) (506 SE2d 130) (1998) (failure to charge jury on false statement by witness did

18

not mandate reversal where trial court properly instructed on impeachment and credibility of witnesses).

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Mercier, J., concur*.