310 Ga. 538
FINAL COPY

S20A1273.  GOLDEN v. THE STATE.

PETERSON, Justice.

Malik Golden appeals his conviction for felony murder for the death of Donell Hawkins during an attempted robbery.[1] Golden argues that the evidence is insufficient to support the verdict. He also challenges the trial court's admission of his custodial statement on the ground that it was not made freely and voluntarily. And he

---

[1] The crimes took place on June 28, 2016. On October 16, 2018, a Houston County jury indicted Golden along with Kendra Tillery and Willie Walters, charging all three with malice murder, felony murder predicated on aggravated assault with a deadly weapon, felony murder predicated on aggravated assault with intent to rob, two counts of aggravated assault, and attempted armed robbery. At a January 2019 trial, the jury found Golden not guilty of malice murder and guilty on all other counts. On January 18, 2019, the trial court sentenced Golden to life with the possibility of parole for the felony murder count predicated on aggravated assault with a deadly weapon and merged the other counts. Because the State does not challenge the trial court's decision to merge the other counts, we need not address any error in that decision. See *Dixon v. State*, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017). After Golden's trial, Walters pleaded guilty to felony murder, also receiving a sentence of life imprisonment, and Tillery pleaded guilty to attempted armed robbery. On January 22, 2019, Golden filed a motion for new trial, which was amended on November 19, 2019. The trial court denied the motion in an order entered on February 6, 2020. Golden filed a timely notice of appeal, and the case was docketed to this Court's August 2020 term and submitted for a decision on the briefs.

argues that the court erred in admitting hearsay evidence and in denying his motion for a mistrial when his co-indictee testified that Golden had committed a previous robbery. The evidence is sufficient to support Golden's conviction and the trial court committed no reversible error, so we affirm.

The evidence presented at trial, taken in the light most favorable to the verdict, is as follows. On the afternoon of June 28, 2016, Kendra Tillery drove with Golden, her boyfriend, to pick up her friend, Quantisha Parks, in Macon. Golden, Tillery, and Parks then drove to the home of Golden's mother in Warner Robins and met up with Golden's friend, Willie Walters. Tillery told Parks about a plan to rob Hawkins, a drug dealer who was staying at a Budget Inn in Houston County. They then drove in Walters's car toward the Budget Inn, parking nearby.

Tillery exchanged text messages with Hawkins in which she made plans to meet up with him. Tillery directed Parks, whose face Hawkins would not recognize, to go to Hawkins's room to inquire about purchasing marijuana. Parks approached Hawkins's motel

room, carrying her phone in her back pocket to allow Golden, Walters, and Tillery to listen to her conversation with Hawkins. Someone at the motel told Parks that Hawkins was not in his room, and Parks returned to the car, but then went back to the motel room once Tillery informed her that Hawkins was either back in his room or on his way there. Parks asked Hawkins about purchasing marijuana, then told him she would have to return with the money for payment.

Golden and Walters then went to Hawkins's room. After confronting Hawkins, either Golden or Walters shot Hawkins one time. Law enforcement officers found Hawkins lying dead on the ground outside his motel room. Video surveillance recorded two men running away from the motel, with one wearing a ski mask and the other (identified by a witness as Golden) carrying a book bag. Tillery and Parks, who had been sitting in a nearby restaurant, picked up Golden and Walters after being informed by a bystander that there had been a shooting. After staying in Warner Robins for the night and dropping off Parks in Macon, Golden, Walters, and Tillery drove

3

north. Walters stayed in New York, and Tillery and Golden went to Connecticut.

Although her testimony at Golden's trial was somewhat conflicting, Parks at one point testified that, while she was in the car with them, Golden, Walters, and Tillery discussed a plan to rob Hawkins. Parks testified that Walters brought the gun and two ski masks, giving the gun and one mask to Golden, but Golden reported to her that Walters shot Hawkins. Walters testified that Golden and Tillery came up with the plan, Golden provided the gun and a mask that had been inside a book bag, and Golden shot Hawkins. Golden did not testify at his trial, although the jury heard a video-recorded police interview of Golden in which he claimed that he went to Hawkins's room to buy marijuana, that he did not know that Walters had a gun, and that Walters shot Hawkins in Golden's presence.

1. Golden challenges the sufficiency of the evidence supporting his felony murder conviction, arguing that the trial evidence fails to meet the standard set forth in *Jackson v. Virginia*,

4

443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).[2] We conclude that the evidence was sufficient.

Under *Jackson v. Virginia*, we evaluate the sufficiency of evidence as a matter of federal due process under the Fourteenth Amendment to the United States Constitution by determining whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See 443 U.S. at 319. Under that test, this Court views the evidence in the "light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013) (citation and punctuation omitted).

The only specific sufficiency argument that Golden makes on appeal is that the State failed to present sufficient evidence to prove his guilt "with the exception of the evidence improperly admitted."

___

[2] Golden challenges the sufficiency of the evidence for all of the counts of which he was found guilty. But Golden was sentenced on only one count — felony murder predicated on aggravated assault with a deadly weapon — and the remaining counts were merged. His challenge as to the merged counts is moot, and we limit our sufficiency review to the one count for which he was convicted. See *Lupoe v. State*, 284 Ga. 576, 577 (1) n.2 (669 SE2d 133) (2008).

We address below Golden's claims that certain evidence was improperly admitted, but those claims do not affect our assessment of the sufficiency of the evidence. "When we consider the legal sufficiency of the evidence under *Jackson v. Virginia*, we consider all the evidence presented at trial, without regard to whether some of that evidence might have been improperly admitted." *Virger v. State,* 305 Ga. 281, 286 (2) n.3 (824 SE2d 346) (2019) (citation and punctuation omitted).

Applying that standard, there was ample evidence to convict Golden of felony murder. OCGA § 16-5-1 (c) provides that "[a] person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice." In this case, the indictment alleged that Golden (along with Tillery and Walters) committed felony murder by causing Hawkins's death while in the commission of the offense of aggravated assault by shooting him with a firearm. Walters testified that Golden was

involved in planning the robbery and shot Hawkins.[3] Parks offered testimony that, while she was in the car with them, Golden, Walters, and Tillery discussed a plan to rob Hawkins. Parks also testified that "they" told her to approach Hawkins's motel room while calling them on her cell phone so they could listen to whatever conversation she had with Hawkins, later identifying Golden, Walters, and Tillery as those who were supposed to be listening. Although their testimony differed in specifics, Parks and Walters both testified that Golden had a gun and a mask prior to proceeding to Hawkins's motel room, and Walters said Golden brought the gun and a mask in a book bag. Video surveillance showed Golden carrying a book bag and running away from the scene together with another man following the shooting. Parks testified that she and Tillery picked up Golden

---

[3] Although the jury certainly could have found that Walters was an accomplice of Golden, federal constitutional due process does not require compliance with the corroboration requirement of OCGA § 24-14-8. See, e.g., *State v. Grier*, 309 Ga. 452, 455-456 (2) (847 SE2d 313) (2020) (concluding that evidence was sufficient to sustain convictions as a matter of federal constitutional due process under *Jackson v. Virginia*, "regardless" of whether evidence showed that State's witness was an accomplice, before considering whether evidence was sufficient under state law, specifically OCGA § 24-14-8). Golden argues only that the evidence was insufficient under *Jackson* and does not allege a violation of OCGA § 24-14-8.

and Walters after the shooting, which caused Hawkins's death. And the evidence showed that Golden left the state soon after the crime. See *Coates v. State*, __ Ga. __, __ (849 SE2d 435) (2020) (flight is evidence of consciousness of guilt, and thus of guilt itself).

Moreover, Golden admitted in his video-recorded interview that he was present for the shooting, and the jury was entitled to reject his attempts to shift blame to Walters for the crime. See *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)). The evidence was sufficient to convict Golden of felony murder predicated on aggravated assault with a deadly weapon.

2.    Golden next argues that the trial court erred in denying his motion to suppress his custodial statement. We disagree.

At a pre-trial hearing on Golden's motion to suppress, the State introduced evidence that, after Golden was arrested in Connecticut, Detective Mark Wright interviewed him. Before beginning the

8

interview, Detective Wright read aloud from a waiver-of-rights form provided by the Connecticut police, and Golden circled and signed yes to indicate that he understood the rights; a question on the form about whether Golden wished to give up those rights and answer questions was left unanswered.

Following the hearing on the motion to suppress, the trial court orally denied Golden's motion, concluding, based on Detective Wright's testimony and the waiver-of-rights form, that Golden's statement was given without hope of benefit or threat of injury and that Golden was advised of his rights and appeared to understand those rights. The trial court purportedly conditioned its ruling on a review of the statement showing that Golden did not invoke his right to counsel, although the video recording of that statement was not played or admitted at the hearing.

The video of the custodial interview was played for the jury at trial over objection. The video showed that, after being told that he had the right to consult with an attorney before being questioned and could have an attorney with him during questioning, Golden

9

asked if that included a public defender. Detective Wright responded that he was not sure what the process was in Connecticut or "if they come out here, but it's any attorney." Golden said that he understood that explanation. In denying Golden's motion for new trial, the trial court found that Golden voluntarily waived his rights and submitted to questioning.

Citing OCGA § 24-8-824, Golden argues that his custodial statement should have been suppressed because it was not made freely and voluntarily. OCGA § 24-8-824 provides that, "[t]o make a confession admissible, it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."

> The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances. Although we defer to the trial court's findings of disputed facts, we review de novo the trial court's application of the law to the facts. We will not disturb the trial court's factual and credibility determinations unless they are clearly erroneous. However, where controlling facts are not in dispute, such as those facts discernible from a videotape, our review is de novo.

*Perez v. State*, 309 Ga. 687, 692 (2) (848 SE2d 395) (2020) (citations and punctuation omitted).

Golden specifically complains that the interview lasted more than four hours with no breaks for food, water, or use of the restroom. The record does show that Golden's interview lasted about four hours, beginning somewhere between 7:00 and 8:00 on the night of October 20, 2016. And Detective Wright testified that he could not remember discussing with Connecticut law enforcement whether Golden had been given food or drink prior to the interview, and that he did not know anything about the amount of sleep Golden had. But the video recording of the interview shows Golden entering the interview room with a takeout container of food and being handed a bottle of water thereafter. Although Golden was handcuffed initially, the handcuffs were removed less than 20 minutes after the interview began. Detective Wright's tone during the interview was genial, and he told Golden that although the detective could speak to the district attorney and relay his impressions of Golden's

11

credibility, he could not promise any particular outcome. And "nothing in the video suggests excessively lengthy interrogation, physical deprivation, brutality, or other such hallmarks of coercive police activity. . . ." *Price v. State*, 305 Ga. 608, 612 (2) (825 SE2d 178) (2019) (citation and punctuation omitted) (no error in concluding defendant's statement was voluntary despite interview lasting about six hours). The evidence supports the trial court's conclusions that Golden gave his statement voluntarily and without any hope of benefit or threat of injury.

Golden also argues that he was denied his constitutional right to talk with legal counsel before the interview, complaining that Detective Wright made no effort to inquire into Golden's question about a public defender.

> It is well established that a suspect who asks for a lawyer at any time during a custodial interrogation may not be subjected to further questioning by law enforcement until an attorney has been made available or until the suspect reinitiates the conversation. To invoke this right, however, a suspect must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. . . . [T]he mere

12

mention of the word "attorney" or "lawyer" without more, does not automatically invoke the right to counsel.

*Dozier v. State*, 306 Ga. 29, 35 (4) (b) (829 SE2d 131) (2019) (citations and punctuation omitted).

Golden at one point sought clarification as to whether his right to an attorney included access to a public defender. But the detective answered Golden's question, and Golden asked no follow-up questions after the detective claimed ignorance about the process of connecting Golden with a public defender. Golden did not affirmatively state that he would like to speak to a public defender or secure paid counsel. And when an equivocal reference to counsel is made, interviewing officers need not clarify the request. See *Kirby v. State*, 304 Ga. 472, 476 (2) (a) (819 SE2d 468) (2018). Because a reasonable officer would not have interpreted Golden's question as an invocation of his right to counsel, the trial court did not err in admitting Golden's statement. See *Carroll v. State*, 275 Ga. 160, 160-161 (2) (563 SE2d 125) (2002) (defendant's question as to "how" he would be appointed an attorney was not an unambiguous request

for counsel).[4]

3. Golden next argues that the trial court erred in admitting the testimony of Parks about the text communications between Tillery and Hawkins. We find no error.

Although Parks did not see the text messages that Tillery exchanged with Hawkins, her trial testimony described the texts as part of the robbery set-up to learn Hawkins's location and when he would return to the motel.[5] Golden's counsel objected to Parks's

---

[4] As part of his claim that the trial court should have suppressed his pretrial statement, Golden also argues that his statement was not sufficiently corroborated. He is wrong, even assuming that any part of his statement constituted a "confession" that necessitated corroboration under OCGA § 24-8-823. See *English v. State*, 300 Ga. 471, 474 (2) (796 SE2d 258) (2017) (a merely incriminating statement that admits to damaging circumstances but seeks to deny responsibility for the crime by putting forward exculpatory or legally justifying facts is not a confession requiring corroboration). "[N]o specific manner of corroboration of the confession is required, and corroboration in any particular is sufficient." *Muckle v. State*, 302 Ga. 675, 679 (1) (b) (808 SE2d 713) (2017) (citation and punctuation omitted). "[W]hen the jury finds that a confession is corroborated, it need not find proof of guilt beyond a reasonable doubt from evidence separate from and wholly independent of the confession, and it instead may consider the confession along with other facts and circumstances independent of and separate from it." *Norman v. State*, 298 Ga. 344, 346 (2) (a) (781 SE2d 784) (2016) (citation and punctuation omitted). To the extent that corroboration of any part of Golden's statement was required, the evidence discussed in Division 1 was sufficient.

[5] Parks testified as follows:

Q: When Kendra was texting, did you know what she was texting about?

14

testimony about Tillery's texts as hearsay, but the trial court overruled the objection on the ground that Tillery's description of the texts to Parks was the statement of a co-conspirator.[6] In denying Golden's motion for a new trial, the trial court specifically found that any statements from Tillery to Hawkins were statements by a co-conspirator in furtherance of the conspiracy. Moreover, the trial court found, many of the statements were "deceptive in nature" and not offered for the truth of the matter.

---

A: As far as I know, she was just trying to figure out where he was and what time he would be back at the hotel.
Q: And did she ever text him about a gun?
A: Yes.
Q: Asking about a gun?
A: Yes.
Q: And what was that about?
A: She asked him did he have guns because she said that she likes to feel protected. She wanted to feel safe.
Q: Now, at that point did you know why she was texting [Hawkins]?
A: To see where his location was I guess so they can go ahead and, you know, and rob him I guess. I mean, I really don't know besides the point of trying to figure out when he was coming back. That was it.
Q: And at some point did [Hawkins] come back, to the best of your knowledge?
A: Yes, sir.
Q: And what happened next?
A: After that, that's when she was like, He said he [was] on his way back.

[6] Detective Wright later testified in detail as to the contents of the text messages, which were recovered from Hawkins's cell phone.

The trial court did not err in overruling the objection to Parks's testimony. The testimony in question consisted primarily of Parks's recitation of questions she understood Tillery was asking Hawkins, in particular where he was and whether he had firearms. Even if these were statements by Tillery offered for the truth of the matter, the trial court did not err in concluding that they fell under OCGA § 24-8-801 (d) (2) (E), which provides that "[a] statement by a coconspirator of a party during the course of and in furtherance of the conspiracy" shall not be excluded by the hearsay rule.

To admit evidence under that rule, "the State is required to show by a preponderance of the evidence that a conspiracy existed, the conspiracy included the declarant and the defendant against whom the statement is offered, and the statement was made during the course and in furtherance of the conspiracy." *Kemp v. State*, 303 Ga. 385, 392 (2) (b) (810 SE2d 515) (2018).

> In reviewing the trial court's decision regarding the admissibility of evidence, we accept the trial court's factual findings, such as whether a statement was made in furtherance of a conspiracy, unless they are clearly erroneous. We apply a liberal standard in determining

16

> whether a statement is made in furtherance of a conspiracy, and statements that further the interests of the conspiracy in some way meet this standard.

Id. at 393 (2) (b) (citation omitted). Golden makes no argument on appeal as to why this exception does not apply, stating simply that the exceptions for prior witness statements and admissions by party-opponents (the latter of which encompasses statements by a co-conspirator of a party in furtherance of the conspiracy) do not apply and that the trial court should not have allowed Parks's testimony about the texts. The trial court certainly could infer from the evidence that Tillery and Golden entered into a conspiracy to rob Hawkins and that Tillery's remarks to Parks about her texting with Hawkins were intended to apprise Parks of Hawkins's location so she could proceed to his motel room as part of the robbery plan. The trial court did not clearly err in concluding that the elements of the hearsay exception were met.

Parks also testified that Tillery told her that Hawkins said he was on his way back to his motel room. But that was not offered for the truth of the matter that Hawkins actually said that he was on

17

his way back in his motel room, or was in fact on his way back. Rather, it was offered to explain why Parks then proceeded to Hawkins's motel room. It therefore was not hearsay and the trial court did not err in admitting it. See *Mosley v. State*, 307 Ga. 711, 719 (3) (c) (838 SE2d 289) (2020) (burglary victim's testimony recounting statements by co-indictee of appellant, i.e., that co-indictee asked victim to pick her up, was not hearsay because the testimony simply explained why victim left his residence and linked key phone numbers).

4. Finally, Golden argues that the trial court erred in denying his motion for a mistrial made after Walters alluded to a prior bad act by Golden. We disagree.

Pressed on cross-examination about whether Golden really announced to everyone in Walters's car that he planned to rob Hawkins, Walters asserted that Golden had robbed someone previously. Golden's counsel objected and moved for a mistrial; the court denied the motion but struck the statement from the record, instructing the jury to disregard the statement. The court then

18

excused the jury for lunch; after lunch, the court reiterated its instruction about disregarding the statement before Walters resumed his testimony.

On appeal, Golden notes that generally "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith." OCGA § 24-4-404 (b). He argues that Walters's testimony that Golden had robbed someone previously brought Golden's character into question, without any prompting by Golden, who introduced no evidence. And Golden argues that the testimony did so falsely, given that the State acknowledged that it had no information about prior robberies by Golden. Golden argues that a mistrial was warranted given that the comment was "critical" to the jury's determination, and the trial court's reiteration of its curative instruction only amplified the significance of the prejudicial statement.

"The refusal to grant a mistrial based on a prejudicial comment lies within the discretion of the trial court, and this Court will not interfere with that discretion on appeal in the absence of a manifest

19

abuse." *Dublin v. State*, 302 Ga. 60, 67 (4) (805 SE2d 27) (2017) (citation and punctuation omitted); see also *Rosser v. State*, 308 Ga. 597, 602 (2) (842 SE2d 821) (2020). "[A] new trial will not be granted unless it is clear that the trial court's curative instruction failed to eliminate the effect of the prejudicial comment." *Dublin*, 302 Ga. at 67 (4) (citation and punctuation omitted).[7]

"The trial court's instruction in this case was sufficient to protect [Golden] from any prejudicial effect of [Walters]'s vague, nonresponsive allusion to [Golden] robbing someone." *Dublin*, 302 Ga. at 67 (4). Therefore, the trial court did not abuse its discretion in failing to grant appellant's motion for a mistrial. See id. at 66-67 (4) (no abuse of discretion in denying mistrial where witness made

---

[7] Golden cites *Gearin v. State*, 208 Ga. App. 878, 879-882 (2) (432 SE2d 818) (1993), wherein the Court of Appeals ruled that curative instructions to disregard evidence about other burglaries committed by the defendant were inadequate and a mistrial should have been granted. But even assuming that case was correctly decided, it does not apply here. The jury in *Gearin* heard extensive evidence about the other burglaries before the trial court granted a directed verdict on charges stemming from those burglaries when a key State witness, who was expected to connect the defendant to all of the burglaries, refused to testify. See *Binns v. State*, 237 Ga. App. 719, 720 (2) (516 SE2d 583) (1999) (distinguishing *Gearin*), overruled on other grounds by *State v. Lane*, 308 Ga. 10, 17 (1) (838 SE2d 808) (2020).

nonresponsive reference to defendant previously saying "something about robbing somebody on occasions, times before" and trial court instructed jury that it should "disregard . . . completely . . . any events other than on" the date of the charged murder (punctuation omitted)); *Turner v. State*, 299 Ga. 720, 722-723 (5) (791 SE2d 791) (2016) (no abuse of discretion in denying mistrial where witness testified that she saw defendant smoking marijuana about a week before the charged shooting); *Rafi v. State*, 289 Ga. 716, 720 (4) (715 SE2d 113) (2011) (trial court did not abuse its discretion in denying motion for mistrial when witness referred to defendant as a drug dealer).

*Judgment affirmed. Melton, C. J., Nahmias, P. J., and Boggs, Bethel, Ellington, and McMillian, JJ., concur. Warren, J., not participating.*

DECIDED DECEMBER 7, 2020.
Murder. Houston Superior Court. Before Judge Adams.
*Jeffrey L. Grube*, for appellant.
*George H. Hartwig III, District Attorney, Daniel P. Bibler, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Alex M. Bernick, Assistant Attorney General*, for appellee.