NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the
# Supreme Court of Georgia

No. S26A0529
Anthony Douglas Shoffner Jr.
v.
The State

On Appeal from the Superior Court of Houston County
No. 2022C0057524A

Decided: May 19, 2026

BETHEL, Justice.

A jury found Anthony Douglas Shoffner Jr. guilty of malice murder and related crimes in connection with the stabbing deaths of his mother Rebecca Griffin and stepfather Kenneth Griffin.[1]

---

[1] The crimes occurred on March 11, 2020. In October 2020, a Houston County grand jury indicted Shoffner for malice murder (Counts 1 and 2), felony murder predicated on aggravated assault (Counts 3 and 4), aggravated assault with a knife (Counts 5 and 6), and possession of a knife during the commission of a felony (Counts 7 and 8). In March 2022, Shoffner was reindicted for the same eight counts, as well as an additional count of aggravated assault against a third victim (Count 9). Count 9 was nolle prossed before trial. A June 2022 jury trial ended in a mistrial. Shoffner was retried the following week, and the jury found him guilty of all counts. The trial court sentenced Shoffner to serve consecutive sentences of life in prison without the possibility of parole on Counts 1 and 2 and a consecutive 5 years' imprisonment on each of Counts 7 and 8. The remaining counts merged or were vacated by operation of law.

Shoffner timely filed a motion for new trial, which was subsequently amended through new counsel. Following an evidentiary hearing, the trial court entered an order denying Shoffner's motion for new trial, as amended, on September 22, 2025. Shoffner timely filed a notice of appeal, and his appeal

On appeal, Shoffner argues that the evidence was not sufficient as a matter of constitutional due process to support his convictions, that the trial court erred by denying his motions to suppress and for mistrial, and that trial counsel was constitutionally ineffective. For the reasons that follow, Shoffner's claims fail, so we affirm.

1. Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed the following. On the morning of March 11, 2020, Kenneth and Rebecca Griffin were found stabbed to death inside their apartment. Earlier that morning, a maintenance worker at the Griffins' apartment complex had observed Shoffner walking the Griffins' two dogs and, later, leaving with the dogs in Kenneth's maroon Jeep. Shortly after, Shoffner abandoned the dogs at a local pet store. Shoffner then visited a gaming store and sold various pieces of Kenneth's gaming equipment.

Shoffner proceeded to drive to a nearby apartment complex, where he chased a maintenance worker while wielding a baseball bat, struck the worker with the bat, and accused the worker of sexual assault. Shoffner then went to a local pharmacy where he verbally assaulted one of the store's patrons, leading the manager to call 911. Upon arrival, police placed Shoffner under arrest. The responding officer determined Shoffner was wanted in connection with the Griffins' deaths based on a description of the suspect and the type of vehicle the suspect was believed to be driving.

After obtaining a search warrant, investigators searched the Jeep. A bookbag containing a large chef's knife, jewelry, and

---

was docketed to this Court's term beginning in December 2025 and submitted for a decision on the briefs.

2

watches was found inside the Jeep, along with a receipt from the gaming store showing the sale of various items earlier that day. Investigators found an additional knife inside the vehicle that had staining consistent with dried blood.

Although Shoffner refused to communicate with police on the day of his arrest, the next day, March 12, he made a custodial statement. The interview was audio- and video-recorded, and a redacted portion of the recording was played for the jury at trial. During the interview, Shoffner took responsibility for the murders, told the interviewing detectives that the knife he used to commit the murders was located in the bookbag found in the Jeep, and indicated where he had hidden the Griffins' cell phones. After the interview, police located the Griffins' cell phones and jewelry in a toilet tank in their apartment, where Shoffner said they would be.

On appeal, Shoffner challenges the sufficiency of the evidence supporting his convictions for malice murder and possession of a knife during the commission of a felony,[2] arguing that the trial evidence fails to meet the standard set forth in *Jackson v. Virginia*, 443 US 307, 319 (1979). The only specific sufficiency argument Shoffner makes, however, is that the State failed to present sufficient evidence to prove his guilt "with the exception of the evidence improperly admitted by [the trial court], as well as the admission of the alleged confession[.]"We conclude

---

[2] Although Shoffner purports to challenge the sufficiency of the evidence "as to any criminal offense" charged in the indictment, he was sentenced for only two counts of malice murder and two counts of possession of a knife during the commission of a felony; the remaining counts merged or were vacated by operation of law. His challenge to the counts for which he was not sentenced is moot, and we limit our sufficiency review to the four counts for which he was sentenced and convicted. See *Golden v. State*, 310 Ga. 538, 540 n.2 (2020).

that the evidence was sufficient.

When we evaluate the sufficiency of the evidence as a matter of federal due process, the "relevant question" is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis omitted). And "[w]hen we consider the legal sufficiency of the evidence under *Jackson v. Virginia*, we consider all the evidence presented at trial without regard to whether some of that evidence might have been improperly admitted." *Copeland v. State*, 314 Ga. 44, 47 (2022) (quotation marks omitted). Thus, contrary to Shoffner's argument, we need not exclude evidence of his confession or any other evidence from our sufficiency analysis, even if he claims that it was improperly admitted. And after reviewing the evidence admitted at trial in the light most favorable to the jury's verdicts, we have no trouble concluding that the evidence was sufficient to support Shoffner's convictions for malice murder and possession of a knife during the commission of a felony, and this claim fails.[3] See *Jackson*, 443 US at 319.

2. Shoffner next argues that the trial court erred by denying his pre-trial motion to suppress his custodial statement made on March 12, 2020, the day after his arrest. We are not persuaded.

The trial court held an evidentiary hearing on Shoffner's

---

[3] This Court no longer sua sponte reviews the sufficiency of the evidence, except that of murder convictions for which the death penalty has been imposed, so we do not "consider[ ] all conceivable sufficiency-related issues" in this case and instead limit our consideration to the sole argument Shoffner advances in challenging the sufficiency of the evidence. *Scoggins v. State*, 317 Ga. 832, 837 n.6 (2023).

motion to suppress, at which the State presented the testimony of the interviewing detective. The detective testified that, at the start of the interview, she informed Shoffner that she wanted to ask him some questions and that she would advise him of his rights. She then presented Shoffner with a written waiver-of-rights form outlining his rights under *Miranda*[4] and proceeded to read aloud from the form, word for word, with Shoffner following along. After the detective finished reading the form, she asked Shoffner if he understood, and he indicated he did. Shoffner acknowledged he understood and was waiving his rights by initialing next to each of the five listed rights and signing the waiver-of-rights form. The detective also testified that she did not recall Shoffner indicating that he did not want to speak with the detectives, asking for an attorney, or invoking his right to remain silent and that Shoffner was not threatened, coerced, or promised anything in exchange for his statement. Although a video recording of the custodial interview was admitted into the record at the hearing, the video was not played at the hearing, and it appears that the trial court did not review the footage before orally ruling on Shoffner's motion. The trial court denied Shoffner's motion, finding by a preponderance of the evidence that Shoffner gave his statement freely and voluntarily and that he knowingly and intelligently waived his rights.

In determining whether a defendant's statement was voluntary as a matter of constitutional due process, a trial court must consider the totality of the circumstances. The State bears the burden of demonstrating the voluntariness of a defendant's statement by a preponderance of the evidence. A trial court's credibility determinations

---

[4] *Miranda v. Arizona*, 384 US 436 (1966).

5

and factual findings relating to the admissibility of statements must be upheld on appeal unless clearly erroneous.

*Brown v. State*, 304 Ga. 435, 439 (2018) (cleaned up). Here, the State presented evidence that Shoffner agreed to be interviewed, that he was informed of and understood his rights under *Miranda*, and that he waived those rights. "These circumstances are generally enough to establish that a statement is voluntary." *Brown*, 304 Ga. at 439; *Prince v. State*, 277 Ga. 230, 232 (2003) (where "determinations regarding the admissibility of appellant's statements are supported by the testimony of the investigating officer, the trial court's findings are not clearly erroneous and will not be disturbed on appeal"). See also *Norwood v. State*, 303 Ga. 78, 82 (2018) ("[F]or a statement to be admitted against a defendant at a criminal trial, an accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored. Generally, whether custodial statements are admissible at trial depends upon whether a suspect was read his *Miranda* rights," and "giving the warnings and getting a waiver has generally produced a virtual ticket of admissibility." (cleaned up)).

On appeal, Shoffner does not challenge these details. Instead, he asserts that he lacked "full knowledge" of his rights, that the State failed to show that his confession was made without hope of benefit or fear of injury, and that he was denied his right to counsel. But Shoffner fails to identify any factual basis or cite any evidence in the record to support these bare assertions. As such, Shoffner has failed to meet his burden of showing error affirmatively by the record, and this claim fails. See *Soto v. State*, 303 Ga. 517, 523 (2018) ("The burden is always on the appellant in asserting error to show it affirmatively by the record." (cleaned

6

up)). See also *Taylor v. State*, 315 Ga. 630, 650 (2023) ("It is not the function of this Court to cull the record for a party to find alleged errors or to form arguments on the appellant's behalf." (quotation marks omitted)).

3. In his third enumeration of error, Shoffner argues that the trial court erred by denying his motion for mistrial based on improper testimony by his sister, but this claim is not preserved for appellate review.

The record reflects that, on direct examination, the State elicited testimony from Shoffner's sister about her attempt to communicate with Shoffner while he was in police custody on March 11, the day he was arrested. After his sister's testimony had concluded and she had been excused, Shoffner objected to the State's questions about his sister's attempted interaction with him, arguing that it violated the court's ruling suppressing evidence of the March 11 custodial interview, and moved for either a curative instruction directing the jurors to disregard that portion of the sister's testimony or a mistrial. The trial court indicated it would give a curative instruction as requested, and Shoffner responded by again requesting a mistrial. The trial court denied Shoffner's motion for mistrial but issued the requested curative instruction to the jury. Shoffner did not renew his motion for mistrial after the trial court gave the curative instruction.

Shoffner argues on appeal that the trial court should have granted a mistrial, but he failed to preserve this claim for appellate review. "It is well settled that a motion for mistrial must be made as soon as the party is aware of the matter giving rise to the motion," and "the failure to promptly move for a mistrial fails to preserve the issue for appellate review." *Pittman v. State*, 318 Ga. 819, 829 (2024). Shoffner failed either to object contemporaneously with the State's initial question, which

obviously sought testimony regarding the March 11 interaction, or to move to strike his sister's response to that question. Instead, he waited until after his sister's testimony had concluded and she had been excused to move for a mistrial based on her testimony. Thus, his motion for mistrial was untimely,[5] and his claim that the trial court erred by denying his motion presents nothing for our review. See id. (where appellant "did not object to the State's question, which clearly was intended to elicit the testimony discussed at the pretrial hearings, and did not move to strike [the witness's] answer, and then waited until after the prosecutor completed the direct examination to make a motion for mistrial," claim that trial court erred by denying mistrial not preserved for appellate review). See also *State v. Spratlin*, 305 Ga. 585, 594 (2019) (denial of untimely motion for mistrial not preserved for appellate review even if the trial court considers the motion on the merits).

4. Finally, Shoffner argues that his trial counsel rendered constitutionally ineffective assistance in several respects. To prevail on his claims, Shoffner bears the burden of showing both that his trial counsel's performance was professionally deficient and that he was prejudiced by that deficient performance. See *Strickland v. Washington*, 466 US 668, 687 (1984). To show deficient performance, "an appellant must overcome the strong presumption that his counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way in the light of all the circumstances and prevailing norms." *Thurman v. State*,

---

[5] Even if Shoffner had timely moved for a mistrial, his failure to renew his motion after the trial court gave the curative instruction means that this claim still would not be preserved for appellate review. See *Robinson v. State*, ___ Ga. ___ (927 SE2d 199) (2026), S26A0282, 2026 Ga. LEXIS 77, *2–*3 (Ga. Mar. 3, 2026).

8

311 Ga. 277, 278 (2021) (cleaned up). And to show prejudice, an appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 278–79 (quotation marks omitted). Shoffner has not met his burden.

(a) Shoffner's first three claims of ineffective assistance are based on his trial counsel's alleged failure to prepare sufficiently for trial and to prepare Shoffner to assist in his defense. Shoffner generally argues that trial counsel failed "to properly interview" unspecified witnesses for the State, failed "to adequately prepare" Shoffner for trial, and failed "to adequately provide" Shoffner with discovery, witness statements, crime scene footage, and footage from police body and dash cameras. But trial counsel's testimony at the motion for new trial hearing shows otherwise. Counsel testified that, in preparation for trial, he met with Shoffner "in excess of 25" times, that he obtained copies of the State's discovery and was "confident" that he provided some of those copies to Shoffner, that he reviewed Shoffner's custodial statement with Shoffner, and that he and Shoffner "reviewed some of the major aspects of th[e] case together."

Though Shoffner complains that counsel failed to provide and review certain items with him before trial, like autopsy reports and the video footage of his custodial statement, Shoffner has not made a proffer showing what evidence or strategy would have been uncovered had counsel done so, nor does he "specifically describe how additional communications with his lawyer would have enhanced his defense." *Tabor v. State*, 315 Ga. 240, 245 (2022) (quotation marks omitted) (rejecting claim that counsel's alleged failure to consult with appellant constituted deficient performance where appellant failed to explain how additional consultation would have helped his defense, particularly in light

9

of evidence that counsel met with appellant multiple times before trial, reviewed discovery with appellant, and explained his planned defense strategies to appellant). See also *Williams v. State*, 316 Ga. 304, 320 (2023) ("[T]here exists no magic amount of time which counsel must spend in actual conference with his client, and [the appellant] does not specifically describe how additional communications with his lawyer would have enhanced his defense." (quotation marks omitted)). Shoffner likewise fails to support his complaint about trial counsel's failure to conduct pre-trial interviews with all the State's witnesses with a proffer as to which witnesses should have been interviewed and what those interviews would have revealed, nor does he explain how those interviews would have aided his defense. See *Tabor*, 315 Ga. at 246 (concluding that appellant failed to show trial counsel performed deficiently by failing to interview witnesses where appellant failed to identify some potential witnesses and offer evidence demonstrating that other potential witness's testimony would have been relevant and favorable). Accordingly, Shoffner has failed to meet his burden of showing that trial counsel was deficient in these respects, and this claim fails.

(b) Shoffner also contends that trial counsel was ineffective by inadequately advising him about the consequences of testifying in his own defense. Shoffner, who did not testify at trial, does not assert that he would have testified had counsel advised him differently and does not explain either what counsel advised him regarding his right to testify or how that advice was deficient. And after reviewing the record, we conclude that Shoffner is unable to show that counsel performed deficiently.

At trial, the trial court engaged in an on-the-record colloquy with Shoffner and his trial counsel about Shoffner's decision not to testify. Trial counsel indicated that he discussed

10

with Shoffner his right to testify, that he advised Shoffner against testifying, and that he informed Shoffner of "the right to go over [counsel's] head" and choose to testify against counsel's advice. When the trial court asked if Shoffner had made a decision whether to testify, Shoffner responded, "I elect not to take the stand." The trial court then asked Shoffner if he understood that he had the right to testify; that he had the right not to testify and could not be compelled to testify; that the decision whether to testify was not his counsel's decision but Shoffner's to make; that, if he chose not to testify, the jury would be instructed not to hold that decision against him; and that, if he chose to testify, he would be subject to cross-examination. Shoffner answered each question affirmatively. The trial court again asked Shoffner whether he wished to testify, and Shoffner again responded, "I wish not to testify."

We have recognized that "it is generally enough for counsel to advise the defendant about the 'pros and cons' of testifying and explain that the ultimate choice is the defendant's to make," as counsel did here. *Nabors v. State*, 320 Ga. 43, 49 (2024) (cleaned up). And "when a defendant has been advised of his rights and makes an informed decision after consultation with trial counsel, a defendant's failure to testify on his own behalf is not in any way connected to any alleged deficiency of his trial counsel." Id. at 50 (cleaned up). Because the record reflects that trial counsel and the trial court informed Shoffner of his right to testify in his own defense and that Shoffner himself made the decision not to testify, Shoffner cannot show that trial counsel performed deficiently in advising Shoffner about that right, and this claim fails.

*Judgment affirmed. All the Justices concur, except Warren, P. J., not participating.*

11