NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 26, 2025

S25A0457.  RICHARDSON v. THE STATE.

PINSON, Justice.

Dominique Richardson was convicted of malice murder for the shooting death of Taylor Holcombe.[1] On appeal, he contends that the evidence was not sufficient and that the trial court abused its discretion in admitting an audio recording of a witness's statement to

---

[1] The crimes happened on October 24, 2015. Richardson was indicted by a DeKalb County grand jury in June 2016, on four counts: malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony. He was tried by a jury from March 13 to March 17, 2017. The jury returned guilty verdicts on all counts. The trial court sentenced Richardson to life in prison without the possibility of parole on the malice murder count. The aggravated assault count merged into the malice murder count. The trial court purported to merge the felony murder count, but the felony murder conviction was actually vacated as a matter of law. See *Heade v. State*, 312 Ga. 19, 29–30 (2021) ("When a valid guilty verdict is returned on both malice murder and felony murder of the same victim, the defendant should be sentenced for the malice murder, and the alternative felony murder count stands *vacated* by operation of law." (cleaned up)). The trial court imposed a five-year sentence for possession of a firearm consecutive to the life sentence. Richardson filed a motion for new trial, which the trial court denied. Richardson then timely appealed to this Court. The case was docketed to this Court's April 2025 term and submitted for a decision on the briefs.

the police as a prior inconsistent statement. These claims fail. The evidence was sufficient as a matter of federal due process and Georgia statutory law, and any error in admitting the recorded statement was harmless. So Richardson's convictions are affirmed.

1. The evidence presented at trial showed the following. At the time of Holcombe's death, she and Richardson had been dating for a few weeks. On October 24, 2015, Richardson and Cedric Porter went to the grocery store where Holcombe worked. Holcombe gave Richardson the keys to her car, and the two men left. The pair returned later in the day to pick up Holcombe from work. The group then traveled to drop Porter off at an apartment where he was staying, and they planned to meet again in the evening to buy marijuana together.

When Richardson and Holcombe picked up Porter later in the day, however, Porter said that the mood between the couple had changed. They were quiet, and Porter felt "tension" between them. The trio stopped at a gas station along their route, and Richardson got out of the car and withdrew cash from an ATM using Holcombe's

debit card. They started driving. Porter testified that, a few minutes later, Richardson made a sudden right turn and pulled out a gun, pointing it at Holcombe. He said that Holcombe then jumped out of the car and ran down the roadway.

Richardson got out too. He fired twice at Holcombe, and she fell to the ground. Richardson then got back in the car, pointed his gun at Porter, and told him that he would kill Porter's family if he told anyone what happened. He also said that he would get rid of the gun and the car. Porter testified that Richardson then dropped him off and told him to go back to the apartment where Richardson was staying. Porter testified that he went to the apartment and that Richardson returned sometime later that evening.

Officers were eventually called to the scene where Holcombe's body remained. They found her body in a state that was consistent with having been run over by a vehicle after she had fallen to the ground. Police also found Holcombe's car, which had been burned.

According to Porter, Richardson thought the police were on to him. He thought that calls he began receiving were from undercover

police officers. So Richardson forced Porter to hand over his phone for Richardson to use. Detectives testified that an extraction of Porter's phone showed searches for information on wiping fingerprints off a gun, news stories about Holcombe's death, and lawyers.

After the night of the shooting, Richardson also visited a friend, Dontavious Davis. Davis initially testified that Richardson came to his home and told him that Holcombe was missing. When asked if Richardson said anything else, Davis responded that he "[could]n't recall." After more questions from the State, Davis testified that Richardson said that "the gun went off in the car and [Holcombe] got shot in the side." When asked if Richardson confessed to shooting her anywhere else, Davis responded "I think in the head."

After this testimony, the State introduced, without objection, a prior written statement that Davis had given to the police. That statement recounted that Richardson said he shot Holcombe in the side and in the head. Davis testified that the written statement was accurate as to what Richardson had told him. In addition to the written statement, Davis had spoken with the police, and that interview

4

was recorded. That audio recording was later admitted as a prior inconsistent statement over defense counsel's objection and played for the jury. In the recording, Davis told officers that Richardson "said she's dead" that he "said he shot her in the car," "that she jumped out of the car," and that Richardson "shot [her] in the head and shot [her] in the side."

The medical examiner who conducted the autopsy of Holcombe testified that the immediate cause of death was blunt force trauma to the pelvis and head caused by a vehicle running Holcombe over,[2] but that a gunshot wound to the head also contributed to her death.

Richardson testified in his own defense at trial. He claimed that Holcombe had bought marijuana from Porter in the past and that the two of them had an argument that day. Richardson also claimed that, after stopping at the gas station with Porter and Holcombe, he went to a high school football game. According to Richardson, Porter and Holcombe dropped him off at the game and then left

---

[2] No evidence was presented at trial that it was Richardson who ran Holcombe over. And Davis testified that Richardson told him another car had done so.

together in her car. He testified that Porter, alone, later returned and joined him at the game. Richardson denied telling Davis he shot Holcombe and further testified that Porter had confessed to killing Holcombe.

The defense also called an expert on cell phone location data. The expert explained the difficulty in getting a precise location from this data. On cross-examination, however, the expert testified that Richardson's cell phone location data made it "possible but highly unlikely" that Richardson's phone was at the football stadium at the time of the crimes as he claimed. The expert also agreed that Richardson's phone was communicating with a tower in range of where the crimes happened at the time they happened.

2. Richardson challenges the sufficiency of the evidence as a matter of federal due process and Georgia statutory law. He also contends that there was not sufficient evidence of his guilt because accomplice testimony was not corroborated. We address these sufficiency arguments in turn.

(a) In addressing whether the evidence presented at trial was

sufficient as a matter of due process under the United States Constitution, we consider "whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *Weston v. State*, 321 Ga. 554, 555–56 (2025) (quotation marks omitted). In doing so, we view the evidence "in the light most favorable to the verdicts," and we do not "reweigh evidence or resolve conflicts in testimony." *Jackson v. State*, 311 Ga. 626, 629–30 (2021) (quotation marks omitted).

Under this standard, the evidence was sufficient to support Richardson's convictions. To convict Richardson of murder, the State had to produce evidence sufficient for the jury to find beyond a reasonable doubt that Richardson "unlawfully and with malice aforethought, either express or implied, cause[d] the death of another human being." OCGA § 16-5-1(a). See also *Scoggins v. State*, 317 Ga. 832, 836 (2023) ("For a malice murder conviction, the requisite criminal intent is that of malice, which incorporates the intent to kill."). Porter testified to his firsthand observation of Richardson shooting Holcombe in the head, and the jury was free to credit his account of

what happened that night over Richardson's. See *Graham v. State*, 301 Ga. 675, 677 (2017) ("[I]t is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." (quotation marks omitted)). There was also testimony from a medical examiner about the cause of Holcombe's death, cell phone location data placing Richardson's phone in the vicinity of the crime scene around the time it occurred, and Davis's testimony that Richardson confided in him about killing Holcombe. And the jury was authorized to believe Porter's testimony that Richardson used Porter's phone to search the internet for information related to the murder. See id. All of this evidence was sufficient to authorize a rational jury to conclude beyond a reasonable doubt that Richardson killed Holcombe with the requisite intent. The evidence also authorized them to find beyond a reasonable doubt that Richardson committed the murder with a firearm, which was sufficient to convict Richardson of possession of a firearm dur-

ing the commission of a felony. See OCGA § 16-11-106(b)(1) (unlawful for any person to have "on . . . his or her person a firearm . . . during the commission of" a felony against the person of another).

(b) As a matter of Georgia statutory law, a conviction based solely on circumstantial evidence may be sustained only if the facts proved at trial "exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. Richardson contends that his conviction was based solely on circumstantial evidence and that this evidence did not exclude the reasonable hypothesis that Porter killed Holcombe.

This sufficiency claim fails too. Code section 24-14-6's standard for convictions based solely on circumstantial evidence does not apply if the State presents direct evidence of the defendant's guilt. See *Troutman v. State*, 320 Ga. 489, 492 (2024). And eyewitness testimony, like Porter's testimony that he saw Richardson shoot and kill Holcombe, is just such direct evidence. See *Bradley v. State*, 318 Ga. 142, 144 (2024).

(c) In felony cases, the testimony of an accomplice alone is not

9

sufficient to establish a fact, unless the accomplice's testimony is corroborated. OCGA § 24-14-8. The trial court instructed the jury on these principles at Richardson's request. On appeal, he does not challenge the jury instructions, but he now contends that the evidence was not sufficient under OCGA § 24-14-8 because Porter was an accomplice and his testimony was not corroborated.

This claim fails. "[W]hen the issue of whether a witness was an accomplice was submitted to the jury and there was evidence allowing the jury to find that the witness was *not* an accomplice, corroborating evidence is not required to sustain a guilty verdict on appeal." *Caldwell v. State*, 313 Ga. 640, 644 (2022). Davis testified that Richardson confessed to killing Holcombe alone. Moreover, there was no evidence that showed that Porter assisted in the commission of the crime. Richardson's own account was that Porter did the crime alone, not that he was an accomplice. Without such evidence, the jury, which was instructed on accomplice corroboration, was authorized to find that Porter was not an accomplice. Because evidence is sufficient to sustain a conviction "without corroboration" when "the

evidence authorizes a jury to find that the witness was not an accomplice," this claim fails. Id. See *State v. Grier*, 309 Ga. 452, 454, 456 (2020) (jury authorized to conclude witness was not an accomplice where evidence showed that the witness got in the car with the gunman after a shooting); *Caldwell*, 313 Ga. at 641–42, 645 (jury could find that witness who went to drug deal with defendant did not share intent to kill and thus was not an accomplice).

3. Richardson claims that the trial court abused its discretion in admitting an audio recording of Davis's statement to the police.

Although Davis ultimately testified that Richardson confessed to shooting Holcombe in the head, Davis initially testified that all he could remember was Richardson saying that Holcombe was missing. And on cross-examination, Davis agreed with defense counsel that his testimony was based on both what Richardson had told him and "things that [he] heard from other people or from the news." So the State sought to introduce Davis's recorded statement to confirm that Richardson had told Davis about what happened. The trial court admitted the audio recording as a prior inconsistent statement during

11

the testimony of a detective. Richardson claims that was error.

Even assuming Richardson is right, any error was harmless. A non-constitutional error is harmless if it is "highly probable that the error did not contribute to the verdict." *Haufler v. State*, 315 Ga. 712, 718 (2023) (quotation marks omitted). When considering whether an error is harmless under this standard, we "review the evidence de novo and weigh it as a reasonable juror would, rather than reviewing it in a light most favorable to upholding the jury's verdicts of guilty." *Moore v. State*, 315 Ga. 263, 271 (2022) (quotation marks omitted).[3] It is highly probable that the admission of the audio recording did not contribute to the verdict in this case. The properly

---

[3] Richardson argues that we must ignore Davis's trial testimony in our harmless error analysis because the audio recording improperly "bolstered" that statement. He points to past cases where we have said that "[w]here improper bolstering has occurred, [the harmless error analysis] must be made without reliance on the testimony that was improperly bolstered." *McGarity v. State*, 311 Ga. 158, 167 (2021). But we have only applied this rule when a trial court admits testimony as a prior *consistent* statement. E.g., id. at 163–68; *Glover v. State*, 296 Ga. 13, 16 (2014); *Allen v. State*, 315 Ga. 524, 534–36 (2023). And we have cabined the rule to that context. See *Harmon v. State*, 319 Ga. 259, 266 n.7 (2024) (rule not applicable to ineffective assistance of counsel claim); *Tavarez v. State*, 319 Ga. 480, 485 (2024) (same). We similarly decline to expand this rule to cases like this, where statements were admitted as *inconsistent* with trial testimony.

admitted evidence against Richardson was very strong. Davis testified that Richardson confessed to shooting Holcombe, Porter recounted his firsthand observation of the murder in great detail, Davis's written statement recounted Richardson's confession as well, and cell phone location data placed Richardson at the scene of the crime at the time it happened. Davis's recorded statement reiterated those same details. Given the strong evidence of Richardson's guilt, and with only Richardson's self-serving testimony supporting another version of events, it was highly probable that admitting the largely cumulative audio recording did not contribute to the jury's verdict. See *Eubanks v. State*, 317 Ga. 563, 583–84 (2023); *Virger v. State*, 305 Ga. 281, 293–94 (2019).

*Judgment affirmed. All the Justices concur.*